Devine, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in St. Lawrence County) to review a determination of respondent State University of New York at Potsdam finding petitioner guilty of sexual misconduct in violation of said respondent’s code of conduct.
Petitioner was a freshman at respondent State University of New York at Potsdam (hereinafter SUNY) in September 2014. In the early morning hours of September 7, 2014, he ran into a female student (hereinafter the complainant) with whom he had been friends for several years, and the two had sex in her dormitory room. The complainant reported to campus police shortly afterward that, while she had not declined to engage in sex and gave no “gesture saying that [the sexual encounter] wasn’t welcome,” she had been sexually assaulted. She refused to reveal the identity of her assailant or submit to a sexual assault examination, but an anonymous tip subsequently pointed to petitioner as the assailant.
SUNY thereafter charged petitioner with sexual misconduct in violation of SUNY’s code of student rights, responsibilities and conduct (hereinafter the student code of conduct). Following a disciplinary hearing at which the complainant did not ap *1201 pear, the Hearing Board found petitioner guilty of sexual misconduct and recommended that he be, among other things, suspended for the remainder of the semester and directed to complete an alcohol evaluation and treatment program and a reflective paper on appropriate sexual conduct and consent. Petitioner’s appeal to SUNY’s Appellate Board resulted not only in his contentions being rejected out of hand, but an unexplained recommendation that the penalty be increased to expulsion. Respondent Kristen Esterberg, as SUNY’s president, was empowered under the student code of conduct to impose the sanction of expulsion and did so. Petitioner then commenced the present CPLR article 78 proceeding.
To begin, after considering the significant impacts that the determination could have upon petitioner’s reputation as well as his educational and job prospects, many of the procedures employed by the Hearing Board give us pause. We cannot reach most of petitioner’s arguments regarding those procedures due to the absence of timely objection at the administrative level (see Matter of Khan v New York State Dept. of Health, 96 NY2d 879, 880 [2001]; Matter of Coleman v State of New York, 38 AD3d 1044, 1046-1047 [2007]). We can, however, consider whether the determination is supported by substantial evidence in the record, defined as “such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact” (Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]; accord Matter of Young v Village of Gouverneur, 145 AD3d 1285, 1286 [2016]). It is not, and we therefore annul.
As set forth in the student code of conduct, consent to sexual activity cannot be inferred from silence and must flow from “spoken words or behavior that indicates, without doubt to either party, a mutual agreement to” proceed. The complainant’s account was set forth by others who had conversed with her, with the Hearing Board considering written notes prepared by respondent Annette Robbins, SUNY’s director of student conduct and community standards, and the hearing testimony of a campus police officer. The complainant told Robbins that petitioner was a friend and that, after running into him on the night in question, she invited him to her dorm room. Petitioner tried in some manner to touch her once they got to the room, then locked the door and led her to bed. The two began “making out” on the bed and, while the complainant stated that she did not verbally consent when petitioner suggested that they have sex, she did take her shirt off. Petitioner took the complainant’s pants off and had relations with her without *1202 wearing protection. The complainant indicated that she “froze up” and did “not respond” to petitioner’s advances, although the record does not reveal how this inner turmoil was manifested or whether petitioner was or should have been aware of it. The Hearing Board found from this that the complainant did not affirmatively consent to having sex and that, as a result, petitioner engaged in sexual misconduct.
It is not clear to us that a reasonable person could find from these hearsay accounts an absence of “behavior that indicate [d], without doubt to either party, a mutual agreement to participate in sexual intercourse,” as to do so would require overlooking the complainant’s admission that she removed her shirt when sex was suggested. Indeed, the only path to finding a lack of consent under these circumstances would be to make inferences that do not reasonably follow from the hearsay accounts of what the complainant said, such as that petitioner intimidated her into agreeing to proceed or that the manner in which she “froze up” should have caused petitioner to question her apparent willingness to engage in sex (see e.g. Matter of Ridings v Vaccarello, 55 AD2d 650, 651 [1976]). The complainant’s subsequent report of a sexual assault — in which she declined to give any details of the incident or identify the male involved and stated her lack of interest in getting the alleged perpetrator in trouble — does nothing to remedy the dearth of proof as to a lack of affirmative consent.
In any event, hearsay must be “sufficiently relevant and probative [if it is] to constitute substantial evidence” (Matter of King v New York State Dept. of Health, 295 AD2d 743, 744 [2002]) and, “when the hearsay evidence is seriously controverted, common sense and elemental fairness suggest that it may not constitute the substantial evidence necessary to support the [challenged] determination” (Matter of McGillicuddy’s Tap House, Ltd. v New York State Liq. Auth., 57 AD3d 1052, 1052-1053 [2008] [internal quotation marks and citation omitted]; see Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y., 24 NY2d 174, 179 [1969]; Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1176 [2015]). Petitioner testified at the hearing and, while the broad contours of his account matched those of the complainant, their accounts differed on the critical issue of consent. Petitioner specifically stated that they began kissing after talking and that, after a while, the complainant took off both of their shirts. Petitioner then removed the rest of their clothing and asked the complainant if she had any condoms, to which she replied that she did not but that it was “fine” and no reason to worry. The complainant then straddled *1203 petitioner from above while they had sex and, after it was over, asked petitioner if he had fun. Simply put, petitioner’s testimony seriously controverted the hearsay evidence indicating that the complainant had not given affirmative consent to sexual relations and, as a result, that hearsay proof did not constitute substantial evidence to support the determination (see Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y., 24 NY2d at 180; Matter of Gerald HH. v Carrion, 130 AD3d at 1176).
Lastly, although we need not reach the propriety of the penalty in light of our determination, we feel the need to comment on the circumstances leading to its imposition. Upon petitioner’s appeal from the decision of the Hearing Board, the Appellate Board, sua sponte and without any explanation, recommended enhancing the penalty to expulsion. We acknowledge that, in the professional disciplinary context, due process does not preclude a reviewing body from using the occasion of a disciplined professional’s appeal to sua sponte increase the severity of a sanction imposed (see Matter of Kabnick v Chassin, 89 NY2d 828, 830 [1996]; Matter of Sarfo v DeBuono, 235 AD2d 938, 939 [1997]). While nothing in the student code of conduct expressly prohibits the Appellate Board from recommending, and SUNY’s president from ultimately imposing, a more severe sanction upon a disciplined student’s appeal, nor does the student code of conduct explicitly advise an appealing student that such a consequence may inure as a result of an appeal. We are troubled by the absence of any such clear articulation that an enhanced penalty may result from a student’s choice to appeal the underlying determination and believe that, in this context, fairness warrants a clear and conspicuous advisement to that effect.
Peters, P.J., and Aarons, J., concur.